UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MAROIL, INC. ET AL.                                              CIVIL ACTION

VERSUS                                                           NO. 08-3539

CAPITAL TOWING, LTD.                                             SECTION "N" (2)


**ORDER AND REASONS**

Before the Court is the Plaintiff Maroil's **Motion to Dismiss Counterclaim (Rec. Doc. 22)**. The motion is opposed. After reviewing the memoranda, the pleadings, and the applicable law, the Court rules as stated herein.

**I. BACKGROUND**

On May 24, 2005, the M/V ELIZABETH R, a vessel owned by Defendant Capital Towing, Ltd. ("Capital"), was towing tank barges MOC IX and MOC X, owned by Plaintiff Maroil, Inc. ("Maroil") westbound in the Gulf Intercoastal Waterway near Port Arthur, Texas, pursuant to a contract between the two companies. At around 3 a.m. that day, the flotilla of the M/V ELIZABETH R was struck by the M/V TAYLOR MARIE, a vessel owned by Eckstein Marine, a third party defendant to this case. Maroil and its insurer, Zurich American Insurance Company ("Zurich") filed suit against Capital under admiralty and maritime law pursuant to Fed. R. Civ. P 9(h), 28 U.S.C. § 1333, and Rule C of the Supplemental Rules for Certain Admiralty

and Maritime Claims. The Plaintiffs claim that the accident was caused by the unseaworthiness of the M/V ELIZABETH R and the negligence of her officers and crew. Capital filed a counterclaim to enforce the terms of the charter agreement between Maroil and itself. Maroil filed the instant motion claiming that, as a foreign limited liability partnership (LLP) not registered with the Louisiana Secretary of State, Capital lacks procedural capacity to assert a claim in the courts of the state of Louisiana, and that through the operation of Rule 17(b)(3) of the Federal Rules of Civil Procedure, this Court is required to give effect to this state's procedural bar. Capital argues that the statute on its face does not bar its counterclaim and that even if it does, application of the statute to its activities violates the Commerce Clause of the Constitution.

## II. ANALYSIS

Pursuant to Rule 17(b)(3), a foreign LLP's capacity to sue is determined "by the law of the state where the court is located." FED. R. CIV. P. 17(b)(3). In Louisiana, capacity is regulated by a "door-closing" statute, LA. REV. STAT. ANN. § 9:3422, which requires foreign partnerships to "file for registry with the secretary of state in the Central Registry for Contracts of Partnership" to enjoy "the rights, privileges and juridical status of a Louisiana partnership . . . ." Capital argues that failure to register pursuant to this statute does not bar a foreign LLP from bringing a claim in a Louisiana court.

There is no recorded case interpreting § 9:3244, and no legislative history to assist the Court in interpretation. Nonetheless, the Court can take guidance from the general codal and statutory provisions governing partnerships, as well as Code provisions providing rules of construction for the Civil Code. Under Louisiana law, a partnership is a juridical person, distinct

2

from its partners. *See* LA. CIV. CODE art. 2801. As a juridical person, a partnership has certain attributes and rights, including "its own domicile, its own patrimony, the right to sue and be sued in its own behalf, and the capacity to make donations and to receive legacies and donations." *Id.* at comment (e) (citing LA. CODE CIV. PROC. arts. 78, 79, 83, 688, 692, 737, and 740); *see also Trappey v. Lumberman's Mut. Cas. Co.*, 86 So.2d 515, 517 (La. 1956) (noting that a partnership is "an abstract ideal being with legal relations separate and distinct from those of its individual members" and "may be used [*sic*] without making the individual members thereof parties defendant"). Sections 3431-35 of Title Nine of the Revised Statutes govern the organization and liability of LLPs, and § 3435 makes the partnership provisions of the Code applicable to LLPs to the extent that they are not superseded by the foregoing provisions.

The statutory construction articles in the Louisiana Civil Code provide that "[p]ersons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity." LA. CIV. CODE art. 7. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LA. CIV. CODE art. 9. "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." LA. CIV. CODE art. 10. "Words of law must be given their generally prevailing meaning." LA. CIV. CODE art. 11. "Laws on the same subject matter must be interpreted in reference to each other." LA. CIV. CODE art. 13.

Applying these interpretive provisions, it is not clear on its face that the phrase "rights, privileges and juridical status" as used in § 9:3422 includes the capacity to sue or, as in this case,

bring a counterclaim. Nonetheless, applying both Code Articles 10 and 13 and longstanding Louisiana precedent to the task of interpreting this phrase, the Court concludes that the capacity to sue in the courts of this state is one of the attributes of "juridical status" that a foreign partnership must register pursuant to § 9:3422 to enjoy. Throughout the Code provisions relating to partnerships and cases interpreting them, one of the recognized rights and privileges of the legal personality granted partnerships under Louisiana law is the capacity to sue and be sued in the partnership's own name. *See* LA. CIV. CODE art. 2801 and comment (e); *see also Trappey*, 86 So.2d at 517; *Dantzler v. Gilchrist*, 704 So.2d 341, 341 (La. App. 1997); *Cortiza v. Rosenblat*, 291 So.2d 425, 428 (La. App. 1974); *Coast v. Hunt Oil*, 96 F. Supp. 53, 56 (E.D. La. 1951). The Court sees no evidence in the statute or elsewhere that the capacity to sue and be sued is not included as one of the rights and privileges of a Louisiana partnership as described in § 9:3422. Prominent commentators also agree that the capacity to sue in its own name is one of the rights and privileges referenced in § 9:3422 and that an unregistered foreign partnership cannot avail itself of Louisiana's courts to prosecute a claim in its own name. *See* 7 LA. CIVIL L. TREATISE § 5.21 (noting "doctrinal and historical" explanations specific to Louisiana's civil law tradition for requiring foreign partnerships to register to avail themselves of Louisiana's courts). Construing § 9:3422 with other Code provisions governing partnerships, and giving the words of the statute their generally prevailing meaning, the Court finds that the capacity to sue in Louisiana's courts is one of the rights and privileges described in § 9:3422.[1]

This conclusion is not the end of the matter, however, since Capital asserts that applying

---

[1] The question of whether an unregistered foreign partnership can *be sued* in Louisiana in the partnership's name is not before the Court and accordingly, the Court expresses no opinion on it.

4

this statute to bar its counterclaim in this instance would violate the Constitution's Commerce Clause by impeding interstate commerce. Application of a door-closing statute to a company engaged in interstate commerce, as opposed to localized or intrastate commerce, violates the Commerce Clause. *See Allenberg Cotton Co., Inc. v. Pittman*, 419 U.S. 20, 32 (5th Cir. 1974). In analyzing this issue, the Court finds instructive the Fifth Circuit's analysis of similar door-closing statutes that apply to private corporations, when it is alleged that application of the statute violates the Commerce Clause. The Fifth Circuit has articulated a two-step test: (1) whether the foreign corporation is doing business in the forum state such that the door-closing statute applies to it and, if so, (2) whether the application of the door-closing statute impedes interstate commerce in violation of the Commerce Clause. *Foxco Inds. Ltd. v. Fabric World, Inc.*, 595 F.2d 976, 980 (5th Cir. 1979). The Court adopts the *Foxco* test to guide its analysis of the door-closing statute dealing with partnerships at issue in this case. As to the first prong, the Circuit has looked to such factors as the presence of employees in the forum state and the percentage of profits derived from the forum state, among others. *Id.* The essential question in such cases is whether the defendant's activities "are in the course of Interstate or Intrastate commerce." *Id.*; *see also SAR Mfg. Co., Inc. v. Dumas Bros. Mfg. Co., Inc.*, 526 F.2d 1283, 1284 (5th Cir. 1976). This determination is a highly fact-specific one and will turn on the terms of the contract and the course of conduct of the parties. *Foxco*, 595 F.2d at 981.

Considering the somewhat meager submissions made in support of and opposition to the instant motion, the Court finds that it requires additional briefing from the parties to resolve this issue. Further, the Court finds that proper resolution of this issue will require it to look beyond the pleadings, and that the submission of affidavits and other documents will likely be advisable.

5

Accordingly, the Court will grant each party leave until July 13, 2009 to update its briefs. Upon proper motion with good cause shown, the Court may also grant the propounding of additional discovery requests limited to the question of whether Capital's commercial activities are interstate or intrastate.

### III. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the parties are granted leave until July 13, 2009, to update their briefs on the question of whether Capital's commercial activities meet the test articulated in *Foxco* and other cases.

New Orleans, Louisiana, this 19th day of June, 2009.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**